# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2036-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.A.I.,[1]

     Defendant-Appellant.

_____

          Submitted October 14, 2025 – Decided November 24, 2025

          Before Judges Natali and Walcott-Henderson.

          On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 23-03-0160.

          Rocco C. Cipparone, Jr., attorney for appellant.

          Andrew B. Johns, Gloucester County Prosecutor, attorney for respondents (Michael Mellon, Assistant Prosecutor, on the brief).

---

[1] Given the facts underlying defendant's conviction of N.J.S.A. 2C:24-4(b)(5)(iii), we use initials in the caption to protect the privacy interests of the parties and the confidentiality of these proceedings. See R. 1:38-3(c).

PER CURIAM

Defendant appeals from a January 30, 2025 judgment of conviction and sentence to parole supervision for life ("PSL"), following his plea to third-degree possession of sexually explicit materials depicting children, N.J.S.A. 2C:24-4(b)(5)(iii). More particularly, defendant argues the sentencing court erred in imposing PSL because the State's expert, Dr. Christopher Staples, Ph.D., from the Adult Diagnostic and Treatment Center at Avenel, and his expert, Dr. Jason Cohen, Psy.D., agree he is at low risk of reoffending and not a danger to the community. For the reasons that follow, we remand for proceedings consistent with our opinion.

The relevant facts are not in dispute. Defendant pleaded guilty to third-degree possession of less than 1,000 images of child sexual abuse material, N.J.S.A. 2C:24-4(b)(5)(iii). Prior to sentencing, the State filed a motion seeking PSL and a multi-day hearing ensued.

At the hearing, the State presented the testimony of Detective Daniel Farid, of the prosecutor's office, and its expert Dr. Staples. Defendant presented his own expert, Dr. Cohen. The parties each stipulated to the opposing expert's qualifications and expertise in the field of psychology.

2

Dr. Staples testified he agreed with the conclusion of defendant's expert that defendant "would not be a risk to the community," and in response to a follow-up question posed by the judge, he agreed that the special sentence of PSL is not needed to protect the community or deter defendant from future criminal activity.

Dr. Cohen testified consistent with the findings and conclusions in his report that defendant was at low risk for future offending. He recounted defendant's admission that he viewed and possessed thirty images depicting child sexual abuse material but added that defendant was embarrassed and apologetic for his conduct. Dr. Cohen further testified that during his interview, defendant had explained that at the time, he was grieving the loss of his parents and wife and when he initially clicked on images of naked children, he did not know it would be illegal. Dr. Cohen also discussed the results of several tests he administered to defendant, which formed the basis of his conclusion defendant was not mentally ill and PSL is not required because the community does not need protection from defendant. He further concluded that in light of defendant's non-existent criminal history, he did not need to be deterred from future criminal activity by being placed on PSL.

A-2036-24

At the conclusion of the hearing, the court issued an oral opinion granting the State's motion for PSL. Defendant was sixty-six years old at the time of sentencing. The court reviewed the aggravating and mitigating factors and found aggravating factor three—risk the defendant will commit another offense—applied. The court gave this factor "slight weight" because defendant did not have any "real criminal history" other than a misdemeanor out of Georgia.

Correspondingly, the court found mitigating factor seven—defendant had no history or prior delinquency or criminal history—applied and generally "led a law-abiding life," and gave this factor moderate weight. The court further found mitigating factor ten applied—defendant is likely to respond affirmatively to probationary treatment—and gave this factor moderate weight. The court next applied mitigating factor twelve—the willingness of defendant to cooperate with law enforcement—since defendant was fully compliant and cooperative throughout the investigation and legal process and gave this factor moderate weight. Further, the court reasoned that as this was a negotiated plea agreement, "[t]there is a presumption of reasonableness that appears appropriate under the circumstances" and concluded "the mitigating factors preponderant over the aggravating factors."

4

The court next stated, it "can't ignore" the determination made by the State's Avenel expert, referring to the finding defendant's conduct was repetitive and compulsive, and imposed PSL, prompting defendant to seek clarification from the court as to whether defendant was being sentenced to probation or PSL.[2]  And, for the court to address the fact that both the State's and defense experts testified "[defendant] didn't need to be on PSL."  Defendant further argued the State "presented no evidence, not a scintilla as to why he should be." In response, the court began by acknowledging the difficulty of the decision before it stating,

> [w]e have a report by a very qualified person, which says that [defendant] doesn't need PSL.  I've got a report from Avenel that says [defendant] does.  But then when that expert came to testify he more or less agreed [defendant] probably doesn't.  And the problem is these are internet crimes they're committed in the privacy of your own home.  Trying to balance that out if the defendant reoffends it's on me because the State is seeking [PSL]. . . . Unless, the State withdraws its request for PSL . . . I think there's a chance that defendant could reoffend.

---

[2]  The court first stated it was sentencing defendant to "a period of probation for three years" and as a condition of probation ordered defendant to "engage in treatment under the supervision of a clinician who treats . . . child sex abuse material offenses," prompting a request for clarification as to whether defendant was being sentenced to probation or PSL.

The court imposed PSL after repeating its concern defendant may reoffend, noting the State failed to withdraw its request for PSL, and despite its own finding the expert's testimony and mitigating factors weighed against PSL.

Defendant appealed, asserting a single point for our consideration:

THE SENTENCING COURT ABUSED ITS DISCRETION BY SENTENCING DEFENDANT [] TO PAROLE SUPERVISION FOR LIFE.

More particularly, defendant asserts the statute authorizing the imposition of PSL contains an exception, which was not addressed by the court; the harsh penalties of PSL are not warranted against him; the State's Avenel expert and defense expert concur to a reasonable degree of psychological certainty that defendant is at low risk of reoffending and the community does not need to be protected from him in the future; the court erred in applying certain of the aggravating and mitigating factors, including mitigating factor seven—prior history—and by giving it moderate rather than low rate, and mitigating factor twelve—the willingness of defendant to cooperate with law enforcement—by giving it moderate rather than low weight, despite acknowledging defendant expressed remorse and was fully compliant with the investigative process.

Trial judges are afforded wide discretion in deciding many of the issues that arise in civil and criminal cases. Appellate courts review those decisions

6

for an abuse of discretion. "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." R.Y., 242 N.J. at 65 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

With respect to PSL, these are presumptively imposed and the statutory exception is construed narrowly. It is defendant's burden to show by a preponderance of the evidence that PSL is not needed to protect the community or deter a defendant from future criminal activity, particularly where, as here, expert consensus supports this exception. See N.J.S.A. 2C:43-6.4(a).[3]

_____

[3] Notwithstanding any provision of law to the contrary, a court imposing sentence on a person who has been convicted of endangering the welfare of a

According to the record of the hearing, Dr. Cohen and Dr. Staples agreed on the critical issues concerning whether defendant presented a low risk of reoffending, and the community did not need to be protected from him going forward. Dr. Cohen was unequivocal in his testimony "the community does not need protection from [defendant]." Further, in response to the question whether defendant needs to be deterred from future criminal activity by a special PSL sentence, Dr. Cohen responded in the negative. He explained the basis for his opinion, stating "in addition to the fact that he hasn't done anything since the arrest, and he's been able to control his own behavior with little problem," and is in a new relationship, referring to defendant's fiancé, defendant does not need a special sentence as a deterrent.

As defendant asserts, the State's own expert, Dr. Staples, testified defendant "would not be a risk to the community," and in response to the question posed by the court: whether he agrees that a special sentence of PSL is not needed in this particular case, his response was, "I would. I would." Dr.

child pursuant to [N.J.S.A. 2C:24-4b(5)(b)(iii)], or an attempt to commit [this] offense[] shall include, upon motion of the prosecutor, a special sentence of [PSL] in addition to any sentence authorized by Title 2C of the New Jersey Statutes unless the court finds on the record that the special sentence is not needed to protect the community or deter the defendant from future criminal activity.

Staples next clarified that his opinion was offered to be within a reasonable degree of psychological certainty.

We first note that although courts are free to accept or reject the testimony of experts, as with any other witness, see State v. M.J.K., 369 N.J. Super. 532, 549-51 (App. Div. 2004), it appears here the court found PSL was warranted, in part, because of the State's refusal to withdraw its request for the special sentence. To the extent the court relied on the State to withdraw its motion, the court misinterpreted and misapplied the law. It also appears the court failed to consider the express statutory exception that permits a court to find on the record that the special sentence "is not needed to protect the community or deter the defendant from future criminal activity." N.J.S.A. 2C:43-6.4(a) (emphasis added).

Based on these concerns and after considering the parties' arguments, the transcript of the hearing and the court's oral decision, we are convinced a remand is necessary for the court to provide more fulsome factual findings and legal conclusions regarding the court's decision to impose PSL. We reach this conclusion because, at a minimum, the court failed to meaningfully address or explain its rejection of undisputed expert testimony – offered by both the State's

own expert, Dr. Staples, and defendant's expert, Dr. Cohen – that defendant does not present a risk to the community.

As noted, when imposing PSL, the judge stated, "[w]e have a report by a very qualified person, which says that he doesn't need PSL. I've got a report from Avenel that says he does. But then when that expert came to testify he more or less agreed he probably doesn't." In "balanc[ing] that out" the judge noted "these are internet crimes, they're committed in the privacy of your own home" and "if the [d]efendant re-offends it's on me." The judge decided he could not ignore "the determination made by Avenel" as to defendant's conduct being "repetitive and compulsive, notwithstanding his testimony on the stand that the defendant is at low risk . . . to re-offend."

In addition, the judge noted the testimony of Detective Farid with respect to defendant searching and saving Child Sexual Abuse Material ("CSAM") over a limited period of time and found him to be credible. The judge found that based on such "relative[] availab[ility]" of CSAM material, he could not "find that the special sentence is not needed to protect the community." The court's findings, however, did not address the fact that Dr. Staples' Avenel report, upon which the court relied, similarly recognized the defendant was seized with "sixteen CSAM files" "fourteen images of child erotica," and searched for

CSAM material on "seventeen occasions," but nevertheless recommended defendant participate in specific sex-offender treatments because he believed he would be amenable to such treatment.

Further, the judge made no finding that Dr. Staples was not credible, nor did he otherwise explain his apparent rejection of his sworn trial testimony other than to summarily state his testimony at the hearing was contrary to the conclusion in his Avenel report. On that point, the Avenel report does not appear to stand for the proposition upon which the court relied. Indeed, the report recommends that if defendant is sentenced to a non-custodial term he should "participate in sex offender-specific treatment with a clinician who treats those with CSAM offenses." We again note that at the hearing, he testified defendant was "not [] a risk to the community."

Accordingly, we conclude the lack of specific detailed findings explaining why the court disregarded the undisputed expert testimony at the hearing, mandates a remand for further findings consistent with Rule 1:7-4. Finally, because the court made partial credibility findings, we believe the matter on remand should be assigned to a different judge. See R.L. v. Voytac, 199 N.J. 285, 306 (2009) (stating "[b]ecause the trial court previously made credibility

A-2036-24

findings, we deem it appropriate that the matter be assigned to a different trial court").

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2036-24